IN RE HANSEN'S ESTATE.
HANSEN, APPELLANT, v. HANSEN, RESPONDENT.
No. 9122.
Submitted November 18, 1952. Decided March 24, 1953.
254 Pac. (2d) 1073.

Messrs. Hansen, Hansen & Culver, Baker, for appellant.
Messrs. Young & Martin, Baker, for respondent.
Mr. Al Hansen, Mr. Russel L. Culver and Mr. Martin argued orally.

MR. CHIEF JUSTICE ADAIR:

Appeal from an order admitting to probate a letter bearing date of January 4, 1950, as the holographic will of Charles

Hansen, deceased, and appointing Floyd V. Hansen, a son, as executor.

On January 31, 1951, Charles Hansen died testate at Baker in Fallon county, Montana, leaving an estate, consisting of both real and personal property, all situate in such county.

The only heirs at law or next of kin were Inga Hansen, his widow, residing at Baker, Montana, and two sons by a former marriage, namely, Glenn Hansen, aged 43 years, residing at Potlatch, Idaho, and Floyd V. Hansen, aged 37 years, residing at Minneapolis, Minnesota.

On February 8, 1951, Inga Hansen caused to be filed in the office of the clerk of the district court of Fallon county, a duly attested formal will, bearing date of February 14, 1945, together with a petition that such will be admitted to probate and that letters testamentary issue to her, she being the widow of decedent and the person by him nominated and appointed to be the executrix.

The will, except for the attestation clause which is omitted, reads:

## "Will

"Know All Men By These Presents, That I, Charles Hansen, of Baker, Montana, now of the age of sixty-four years, and being of sound mind and memory, do hereby make, publish and declare this instrument to be my Last Will and Testament, hereby revoking any and all former wills ever by me made.

"First—As soon after my death as convenient can be my executrix, hereinafter named, shall pay my funeral expenses and burial expenses and the expenses of my last sickness and my just debts;

"Second—I then give and bequeath unto my beloved wife, Inga Hansen, all of the rest, residue and remainder of my estate, both real and personal property, for her to have and to use as she sees fit, with the understanding that if, upon her death, there remains any of my property or estate, then and in such event whatever there remains after her death shall go to

524

my only two children, Glenn Hansen and Floyd Hansen, share and share alike.

"Lastly—I hereby nominate and appoint my wife, Inga Hansen, to be the executrix of this, my Last Will and Testament, to act without bond, and I hereby revoke all former wills ever by me made.

"In Witness Whereof, I have hereunto set my hand and seal this fourteenth day of February in the year of our Lord, one thousand and nine hundred and forty-five.

"Charles Hansen (Seal)"

On March 5, 1951, Floyd V. Hansen caused to be filed in the office of the clerk of said district court a petition objecting to the appointment of Inga Hansen as executrix of the last will and testament of the decedent and requesting that a certain letter addressed to said petitioner and bearing date of January 4, 1950, be admitted to probate as the last will and testament of decedent or as a codicil to such previous will and that "petitioner be appointed either as executor or as administrator with the will annexed."

The letter is on a single sheet of paper and reads:

"Mr. and Mrs. Charlie Hanson

Baker, Montana        Jan 4 1950

"Dear Floyd.

"Just in Case we dont get things fixed up here before either one of us leave this world. I would like for you to be administrator. and would like to have you be fair to them all. Ma feels like her kids should have some of it. So we have talked it over. and figured that I should have ½ and her ½ and you and Glen should have half of everything and her kids have the other half and I don't think you would have any trouble in taking care of every thing talk it over with her and be fair.

"Your loving Father
Chas Hansen"

"You might save this."

With the exception of the words "Mr. and Mrs. Charlie Hanson, Baker, Montana," which quoted words are printed at

the top of the letter in printer's set type, the remainder of the letter is written with pen and ink in the handwriting of decedent.

On June 15, 1951, the petition of the widow Inga, the objections thereto of the son Floyd, and the latter's petition for admitting the letter to probate were heard together, following which an order was entered decreeing that decedent's will of February 14, 1945, together with the decedent's letter to Floyd of January 4, 1950, be admitted to probate as decedent's last will and testament and that Floyd be appointed executor thereof.

This is an appeal by the widow Inga Hansen from those portions of the trial court's order: (1) Refusing to grant letters testamentary to her; (2) admitting to probate as a holographic will, the letter of January 4, 1950; (3) granting letters testamentary to decedent's son Floyd and, (4) appointing Floyd as executor.

Had there been no writings or will whatever and had the surviving wife and a surviving son each petitioned for letters of administration, there can be no question but that such letters "must be granted" to the surviving wife whom the law says is entitled to preference as against all other persons. R. C. M. 1947, sec. 91-1401.

However, on February 14, 1945, Charles Hansen, in the presence of two attesting witnesses, made, published, declared and subscribed his name at the end of his formal will of that date.

Upon the execution of the above formal will, Charles Hansen delivered it to his attorney for deposit and safe keeping in the latter's vault at Baker, Montana.

In September or early October of 1950, being ten or more months after writing the letter of January 4, 1950, to his son, Charles Hansen came to his attorney's office in Baker,—asked to see his will, which was handed to him, whereupon he took a seat at a table in the attorney's office where, alone, he read and studied the document. After the passing of some little time, the attorney returned to where Charles Hansen was so seated at the table and, addressing the testator, said: "Charlie, did you read it? * * Do you want to make any changes or is it the

way you want it?'' Charles Hansen replied: ''Just the way I want it, put it back where it was and keep it.'' Thereupon the attorney placed the will in an envelope and again deposited it in the vault as was directed by the testator and there the will remained until after the death and burial of the testator, Charles Hansen.

It is the law of this state that no person is competent or entitled to serve as administrator who is not a bona fide resident of the state, R. C. M. 1947, sec. 91-1405, hence the petitioner Floyd V. Hansen, a resident of and domiciled in the state of Minnesota, could not qualify for letters of administration.

To qualify for letters testamentary the petitioner was required to show that he had been named as executor in decedent's last will and testament, R. C. M. 1947, sec. 91-1301, but decedent's formal will of February 14, 1945, says: ''I hereby nominate and appoint my wife, Inga Hansen, to be the executrix of this my Last Will and Testament, to act without bond * * *'' while the letter of January 4, 1950, addressed to Floyd simply says: ''I would like for you to be administrator.''

In his formal will the testator in two separate paragraphs correctly uses the word executrix, each time referring to his wife Inga Hansen.

The respondent contends that the letter offered by him was a codicil to the formal will, and while the word ''will'' includes codicils, R. C. M. 1947, sec. 19-103, subd. 6, yet R. C. M. 1947, sec. 91-117, provides that, ''The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil.''

The letter makes no reference whatever to any previous will, and the use of the word ''administrator'' therein would rather lead the addressee Floyd to believe that his father had no will and that he merely wanted his son to act in case the father should die intestate.

In 1 Page on Wills, sec. 89, p. 198, it is said: ''A letter written after a will was executed, and providing, 'If I die I want you to have your part of the five thousand insurance I took out for

Spencer Bros. I have written to Bro. George to see that you get it,' was held not to amount to a codicil.''

In re Zech's Estate, 70 S. D. 622, 20 N. W. (2d) 229, involved a letter written by the deceased in February 1942, to one Mary Tesch, a personal friend, wherein she wrote: ''Well Mary, I wanted to tell you and Charley, I wouldn't be in too big a hurry to buy a farm, because when I die Herman's farm will be yours. I will never sell it and there isn't anyone I would want to have it but you, and that would be the way Herman would want it.''

The record in Re Zech's Estate, supra, further shows that in July 1943, deceased duly executed a formal will leaving certain property to certain named parties and that the remainder of her property was left to her niece Nellie Watson. It also shows that in December 1943, deceased mailed a Christmas card to Mary Tesch, the back page of which was blank and on which she again wrote: ''I want you to know Herman's farm will be yours when I die—The papers are all made out so you won't have to pay any tax, etc.'' The court held that these letters were neither codicils nor holographic wills.

The letter makes no reference to the formal will and such lettter may not be considered as a codicil to decedent's will of February 14, 1945. R. C. M. 1947, sec. 91-117. To the same effect see 2 Page on Wills, secs. 545, 546 and 547 and cases there cited.

In Hansen's letter to his son, there is no suggestion or declaration of a revocation of his prior will nor is there any reference thereto. No attempt was made to comply with the provisions of R. C. M. 1947, sec. 91-122 and sec. 91-125, providing for revocation of wills. It is therefore clear that decedent's formal will has never been revoked.

1 Page on Wills, sec. 426, pp. 768, 769, in discussing revocation of wills says that, ''there must be manifest on the face of the will, one of the acts which are prescribed by statute, in order to operate as a revocation of this type. If none of the acts which are prescribed by statute appear upon the face of the will, the will is not revoked, no matter how clear may be testator's inten-

tion to revoke it or what unequivocal oral declarations of his intention he has made.'' Also in section 461, this same authority says: ''The intention of testator to revoke his earlier will must appear on the face of the revoking instrument in jurisdictions where revocation by parol is abolished.''

The letter of Charles Hansen to his son Floyd was neither a holographic will, nor was it a codicil to decedent's earlier formal will which will has never been revoked. The court erred in holding the letter to be a holographic will and in appointing Floyd V. Hansen as executor of the estate. Such order is set aside, vacated and reversed and the cause is remanded to the district court with directions to deny the petition of Floyd V. Hansen; to grant the petition of the widow Inga Hansen; to admit to probate decedent's formal will of February 14, 1945; to issue letters testamentary thereon to Inga Hansen and to appoint her as executrix of said estate. It is so ordered.

ASSOCIATE JUSTICES BOTTOMLY, ANGSTMAN and FREEBOURN, concur.

MR. JUSTICE ANDERSON not being a member of the court at the time of the oral arguments took no part in the decision.